CLOSED

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CRIMINAL DOCKET FOR CASE #: <u>1:21–mj–00715–JRC</u> All Defendants

Case title: USA v. Rajkaran

Date Filed: 06/18/2021
Date Terminated: 06/18/2021

---

Assigned to: Magistrate Judge James R. Cho

**Defendant (2)**

| | | |
|---|---|---|
| **Christopher James Rajkaran**<br>*TERMINATED: 06/18/2021* | represented by | **Kannan Sundaram**<br>Federal Defenders<br>One Pierrepont Plaza, 16th Floor<br>Brooklyn, NY 11201<br>718–330–1203<br>Fax: 718–855–0760<br>Email: <u>kannan_sundaram@fd.org</u><br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Public Defender or Community Defender Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Opening)** | |
|---|---|
| None | |

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

| **Highest Offense Level (Terminated)** | |
|---|---|
| None | |

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Samantha Alessi**<br>DOJ–USAO |

271 Cadman Plaza East
Brooklyn, NY 11201
347–482–9307
Email: Samantha.Alessi@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Government Attorney*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/18/2021 | 1 | | RULE 40 AFFIDAVIT / removal complaint to the District of Minnesota by USA as to Christopher James Rajkaran. Signed by Judge James Cho dtd 6/18/2021. (Yuen, Sui–May) (Entered: 06/22/2021) |
| 06/18/2021 | | | Minute Entry for proceedings held before Magistrate Judge James R. Cho VIA WEBEX VIDEO:Initial Appearance in Rule 5(c)(3) Proceedings as to Christopher James Rajkaran held on 6/18/2021, Attorney Appointment of federal defender Kannan Sundaram for the defendant. AUSA Samantha Alessi. (FTR Log #Weekend arraignment.) Defendant arraigned on a removal complaint to the District of Minnesota. No bail appl presented. Commitment to District of Minnesota entered. Defendant waived identity hearing. (Yuen, Sui–May) (Entered: 06/22/2021) |
| 06/18/2021 | 2 | | COMMITMENT TO ANOTHER DISTRICT as to Christopher James Rajkaran. Defendant committed to District of Minnesota.. Ordered by Magistrate Judge James R. Cho on 6/18/2021. (Yuen, Sui–May) (Entered: 06/22/2021) |
| 06/18/2021 | 3 | | WAIVER of Rule 5(c)(3) Hearing by Christopher James Rajkaran (Yuen, Sui–May) (Entered: 06/22/2021) |

AB:SSA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| UNITED STATES OF AMERICA | AFFIDAVIT IN SUPPORT OF REMOVAL TO THE DISTRICT OF MINNESOTA |
| - against - | |
| CHRISTOPHER JAMES RAJKARAN, | (Fed. R. Crim. P. 5) |
| Defendant. | Case No. 21-MJ-715 |

- - - - - - - - - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

Julie Amato, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

On or about June 16, 2021, the United States District Court for the District of Minnesota issued an arrest warrant commanding the arrest of the defendant CHRISTOPHER JAMES RAJKARAN, in connection with an indictment charging the defendant with violations of Title 18, United States Code, Section 371 (Conspiracy to Commit Securities Fraud); Title 18, United States Code, Section 1343 (Wire Fraud); and Title 17, Code of Federal Regulations, 240.10b (Securities Fraud).

The source of your deponent's information and the grounds for her belief are as follows:[1]

1.      On or about June 16, 2021, the United States District Court for the District of Minnesota issued an arrest warrant commanding the arrest of the defendant CHRISTOPHER

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

JAMES RAJKARAN, in connection with an indictment charging the defendant with violations of Title 18, United States Code, Section 371 (Conspiracy to Commit Securities Fraud); Title 18, United States Code, Section 1343 (Wire Fraud); and Title 17, Code of Federal Regulations, 240.10b (Securities Fraud). True and correct copies of the indictment and arrest warrant are attached hereto as Exhibits A and B, respectively.

      2.     On June 18, 2021, I and other FBI agents apprehended the defendant at his residence in Queens, New York. I asked him for his name, social security number, and date of birth, and he told me his name was "Christopher James Rajkaran" and gave me a social security number and date of birth matching the personal identifying information for the CHRISTOPHER JAMES RAJKARAN wanted in the District of Minnesota. During a post-arrest interview, the defendant confirmed that he is CHRISTOPHER JAMES RAJKARAN.

      3.     Further, I have viewed a photograph of the CHRISTOPHER JAMES RAJKARAN wanted in the District of Minnesota and the defendant appears to be the same person.

      4.     Based on the foregoing, I submit that there is probable cause to believe that the defendant is the CHRISTOPHER JAMES RAJKARAN wanted in the District of Minnesota.

3

WHEREFORE, your deponent respectfully requests that the defendant

CHRISTOPHER JAMES RAJKARAN be removed to the District of Minnesota so that he may be

dealt with according to law.

_____

Julie Amato
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone this
18th day of June, 2021

_James R. Cho_____
THE HONORABLE JAMES R. CHO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# EXHIBIT A

21cr 142 DSD/KMM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

(1) MARK ALLEN MILLER,
(2) CHRISTOPHER JAMES RAJKARAN, and
(3) SAEID JABERIAN,
    Also known as "Andre Jaberian,"

        Defendants.

**INDICTMENT**

18 U.S.C. § 371
15 U.S.C. § 78j(b)
15 U.S.C. § 78ff
17 C.F.R. § 240.10b-5
18 U.S.C. § 1343

### THE UNITED STATES GRAND JURY CHARGES:

## **OVERVIEW**

1.    The defendants devised and carried out a scheme to surreptitiously hijack and assume control over dormant public shell companies. They used their control over the companies to fraudulently manipulate and pump up the price of the companies' stock so that they could profit from the sale of stock to unwitting investors. As part of the scheme, the defendants acquired large amounts of stock in dormant public shell companies that traded over-the-counter at low prices, often less than $0.01 per share. After acquiring the stock at low prices, the defendants assumed control over the shell companies by creating fake and filing fake resignation letters and board resolutions purporting the announce the resignation of the existing management team and the appointment of one or more conspirators as new officers and directors of the companies. The conspirators used their control over the hijacked shell companies to issue fraudulent press releases and public filings designed to

SCANNED
JUN 16 2021
U.S. DISTRICT COURT MPLS

United States v. Mark Miller et al.

fraudulently inflate and "pump up" the price of the hijacked companies' stock. The defendants then sold or "dumped" their stock at the fraudulently inflated and pumped-up prices.

## COUNT 1
(Conspiracy To Commit Securities Fraud)

2.  At times relevant to this Indictment:

a.  Defendant MARK ALLEN MILLER was a stock promoter who lived in Breezy Point, Minnesota.

b.  Defendant CHRISTOPHER JAMES RAJKARAN was a stock promoter who lived in Queens, New York, and Georgetown, Guyana.

c.  Individual A was a stock promoter who lived in Queens, New York. Individual A lived with and was in a relationship with defendant RAJKARAN.

d.  Digitiliti Inc. was a Minnesota corporation that traded publicly over the counter under the ticker symbol DIGI. Digitiliti purported to be a company that provided online data protection, but was actually a dormant shell company without any significant operations or revenue.

e.  Encompass Holdings Inc. was a Nevada corporation that traded publicly over the counter under the ticker symbol ECMH. Encompass purported to be a computer software company, but was actually a dormant shell company without any significant operations or revenue.

f.  Bell Buckle Holdings Inc. was a Florida corporation that traded publicly over the counter under the ticker symbol BLLB. Bell Buckle Holdings

2

USCA2 8

Case 1:21-mj-00715-JRC   Document 1   Filed 06/18/21   Page 97 of 327   PageID 38

United States v. Mark Miller et al.

purported to be a debt collection company, but was actually a dormant shell company without any significant operations or revenue.

g.     Defendant SAEID JABERIAN, also known as "Andre Jaberian," lived in Hopkins, Minnesota. JABERIAN served as the nominal CEO and Board member of Bell Buckle Holdings.

h.     Utilicraft Aerospace Industries Inc. was a Nevada corporation that traded publicly over the counter under the ticker symbol UITA. Utilicraft purported to be an aerospace company, but was actually a dormant shell company without any significant operations or revenue.

i.     Individual B was a relative of MILLER who lived in Breezy Point, Minnesota. Individual B served as the nominal CEO of Utilicraft Aerospace Industries Inc.

j.     The Securities and Exchange Commission (SEC) is a government agency that regulates publicly traded companies in the United States. The SEC requires public companies to issue regular reports updating investors on any events or changes that would be material to investors and potential investors in the company. Such events are reported through the filing of a Form 8-K. The SEC's Electronic Data Gathering, Analysis, and Retrieval (EDGAR) system is the primary system for companies to submit public filings and other documents.

k.     The over-the-counter ("OTC") market is a system of trading stocks that are not listed on centralized stock exchanges, such as the New York Stock Exchange or Nasdaq. Many OTC stocks are "penny stocks" that trade for OTC Markets Group, formerly known as the pink sheets, operates a public market for OTC

USCA2 9

United States v. Mark Miller et al.

stocks. OTC Markets Group provides pricing and liquidity information that facilitates the trading of OTC stocks.

3.      From at least in or about 2017 through in or about 2019, in the State and District of Minnesota, and elsewhere, the defendants,

MARK ALLEN MILLER,
CHRISTOPHER JAMES RAJKARAN, and
SAEID JABERIAN, also known as "Andre Jaberian,"

knowingly and willfully conspired and agreed with each other, Individual A, and others known and unknown to the Grand Jury, to commit securities fraud—that is, to knowingly and willfully, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### The Purpose of the Conspiracy

4.      The purpose of the conspiracy was to hijack and assume control over dormant public shell companies and use that control to fraudulently manipulate the

4

<u>United States v. Mark Miller et al.</u>

price of the company stock so that the conspirators could profit from the sale of stock at fraudulently inflated and "pumped up" prices.

## <u>Manner and Means of the Conspiracy</u>

5.    The conspirators used the following manners and means, among others, to accomplish the purpose of the conspiracy.

a.    The conspirators identified dormant public shell companies—that is, publicly traded companies without active operations that have stopped filing their required SEC and secretary of state filings. These dormant public shell companies traded publicly on the OTC stock market, generally for fractions of a penny per share.

b.    The conspirators then bought stock in the dormant public shell companies at low prices in the OTC market. The conspirators were able to obtain hundreds of thousands or even millions of shares because the stocks traded at only a fraction of a penny per share.

c.    After buying stock in the dormant public shell companies, the conspirators hijacked and took control over the companies by creating and filing fake resignation letters and board minutes purporting to announce the resignation of the prior corporate officers and the appointment of one or more of the conspirators as new officers and board members.

d.    The conspirators used these fake documents to gain access to and control over the companies' accounts with the SEC's EDGAR filing system, which allowed them to make public filings on behalf of the hijacked companies.

USCA2 11

United States v. Mark Miller et al.

   e. The conspirators used their control over the hijacked shell companies to issue fraudulent press releases and public filings designed to fraudulently inflate and "pump up" the price of the hijacked companies' stock.

   f. Finally, the conspirators sold or "dumped" their stock at the fraudulently inflated and pumped-up stock prices to unsuspecting investors.

<b>Overt Acts</b>

  6. In furtherance of the conspiracy and to effect its unlawful objectives, defendants MILLER, RAJKARAN, and JABERIAN committed and caused to be committed the following overt acts, among others, in the State and District of Minnesota, and elsewhere:

**A.** **The Hijacking of Digitiliti Inc. (OTC: DIGI)**

  7. In or about September and October 2017, defendant MILLER hijacked and fraudulently assumed control over Digitiliti Inc. (OTC: DIGI), a dormant public shell company. MILLER used his control over the company to fraudulently manipulate and pump up the price of the company's stock so that he could profit from the sale of at fraudulently inflated prices to unwitting investors.

  8. MILLER hijacked and assumed control over Digitiliti by drafting a fake resignation letter and board minutes falsely stating that the company's prior CEO had resigned, and that MILLER was being appointed as President and CEO.

  9. On or about September 29, 2017, defendant MILLER submitted to the SEC paperwork falsely identifying himself as President and CEO of Digitiliti and a fake resignation letter from Digitiliti's CEO. MILLER used these materials to request

6

USCA2 12

United States v. Mark Miller et al.

the filing codes allowing him to access the company's SEC EDGAR filing account, which allowed MILLER to make public filings with the SEC on behalf of the company.

10.    On or about October 4, 2017, defendant MILLER filed an SEC Form 8-K fraudulently announcing the resignation of the prior CEO and MILLER's appointment as President and CEO of Digilitili.

11.    On or about October 11, 2017, defendant MILLER filed updated corporate registration documents with the Minnesota Secretary of State listing MILLER as the CEO of Digitiliti.

12.    On or about November 4, 2017, defendant MILLER bought 50,000 shares of Digitiliti stock.

13.    After hijacking Digitiliti, defendant MILLER used his control over the company to issue a false and misleading press release on behalf of the company. On or about July 9, 2018, MILLER issued a press release falsely claiming that Digitiliti had "entered into negotiations" with a private company looking to "buy-out" Digitiliti. The press release further claimed, again falsely, that the private company "has a proven track record of revenue generation and success in a highly desirable market sector." This release was fraudulent and designed to pump up and fraudulently inflate the price of Digitiliti stock so that MILLER could sell his shares at a profit.

14.    On or about July 27, 2018, defendant MILLER sold his 50,000 shares of Digitiliti stock.

**The Hijacking of Encompass Holdings Inc. (OTC: ECMH)**

15.    In or about October and November 2017, defendants MILLER and RAJKARAN and others hijacked and fraudulently assumed control over Encompass

USCA2 13

United States v. Mark Miller et al.

Holdings Inc., a dormant public shell company that traded under the symbol ECMH. MILLER and RAJKARAN used their control over the company to fraudulently manipulate and pump up the price of the company's stock so that they and others could profit from the sale of stock at fraudulently inflated prices to unwitting investors.

16.  In 2017, defendants MILLER and RAJKARAN began purchasing shares of ECMH at low prices on the OTC market. Together they purchased more than 40 million shares of ECMH stock.

a.  Defendant MILLER purchased approximately 12 million shares of ECMH stock between June and November 2017.

b.  Defendant RAJKARAN purchased approximately 29 million shares of ECMH stock on or about November 2, 2017.

17.  On or about October 20, 2017, defendant MILLER drafted a fake resignation letter and board minutes falsely announcing the resignation of ECMH's President and CEO and MILLER's appointment as President and CEO of the company.

18.  On or about November 1, 2017, defendant MILLER submitted, through an agent, a request to update the filing codes for ECMH's EDGAR account. MILLER submitted copies of the fake board minutes that fraudulently purported to document the resignation of ECMH's President and CEO and the appointment of MILLER as President and CEO of ECMH.

19.  On or about November 2, 2017, defendant RAJKARAN began promoting ECMH stock on investorshub.com, an internet website popular with individuals who

<u>United States v. Mark Miller et al.</u>

trade in the OTC market. RAJKARAN posted under the username "Blue Pheonix" [sic].

20.     On or about November 2, 2017, defendant MILLER issued an SEC Form 8-K fraudulently announcing the resignation of Encompass's President and CEO and claiming that MILLER had been appointed to serve in these positions.

21.     On or about November 3, 2017, defendant MILLER also issued a press release announcing his appointment as President and board member of Encompass. The press release falsely claimed that the company was "shifting its focus to Residential and Commercial Real Estate Holdings." The release described Encompass as a "diversified holding company which invests in commercial and residential opportunities with the highest possible ROI and cash flow rate to benefit the corporation and its stakeholders." This was not true.

22.     On or about November 8, 2017, defendant RAJKARAN made a series of posts on investorshub.com designed to promote and inflate the price of ECMH stock. For example, he posted that the new CEO was "probably worth close to 20 million in real estate holding[s] and construction equipment . . . heard he owns several strip malls in mn."

23.     On or about November 9, 2017, defendant MILLER issued a second press release on behalf of ECMH. The release falsely claimed that the company had signed a letter of intent to acquire the assets of DDG Properties that were worth approximately $6.4 million. The press release further claimed that Encompass would be assuming DDG Properties' gross revenues of $534,000. None of this was true. Both press releases were fraudulent and designed to pump up and fraudulently inflate the

USCA2 15

United States v. Mark Miller et al.

price of Digititli stock so that MILLER and RAJKARAN could sell their shares at a profit.

24. Defendants MILLER and RAJKARAN then sold or "dumped" their stock after they had fraudulently inflated the stock price through their fraudulent press releases and internet postings.

a. On or about November 13, 2017, MILLER sold all 12 million shares of ECMH at fraudulently inflated prices. In all, he obtained a profit of more than 300 percent.

b. Between November 10 and 14, 2017, defendant RAJKARAN sold more than 34 million shares of ECMH. In all, he earned a return of approximately 150 percent on his "investment."

**The Hijacking of Bell Buckle Holdings Inc. (OTC: BLLB)**

25. In or about February 2018, defendants MILLER, RAJKARAN, and JABERIAN, as well Individual A, hijacked and fraudulently assumed control over Bell Buckle Holdings, Inc., a dormant public shell company that traded under the symbol BLLB. MILLER, RAJKARAN, and JABERIAN used their control over the company to fraudulently manipulate and pump up the price of the company's stock so that they and others could profit from the sale of stock at fraudulently inflated prices to unwitting investors.

26. On or about February 20, 2018, defendant MILLER drafted fake board minutes that falsely purported to accept the resignation of the President and CEO of Bell Buckle Holdings. The minutes also purported to appoint JABERIAN as the new President and CEO.

10

United States v. Mark Miller et al.

27.     Two days later, on or about February 22, 2018, defendants MILLER, RAJKARAN, and JABERIAN, and Individual A, began buying shares of BLLB stock. Collectively, they purchased more than 60 million shares of BLLB stock over the five-day period from February 22 to 26, 2018.

       a.     Miller purchased 8 million shares of BLLB stock on February 22, 2018.

       b.     Defendant RAJKARAN purchased more than 30 million shares of BLLB stock between February 22 and 26, 2018.

       c.     Individual A purchased more than 4 million shares of BLLB on February 22 and 23, 2018.

       d.     Defendant JABERIAN purchased approximately 20.5 million shares of BLLB on or about February 26 and 28, 2018.

28.     On or about February 22, 2018, defendant MILLER filed paperwork reinstating Bell Buckle Holdings's incorporation with the Florida Secretary of State. MILLER listed JABERIAN as the CEO and registered agent of the company on the form. Defendant RAJKARAN paid the $2,108.75 in fees to reinstate the company with the Florida Secretary of State.

29.     On or about February 22, 2018, Individual A began promoting BLLB stock by posting messages promoting the stock on investorshub.com. These posts were designed to fraudulently inflate the price of BLLB stock.

30.     On or about February 23, 2018, defendants MILLER and JABERIAN submitted, or caused to be submitted, an application to obtain the passphrase allowing them to access Bell Buckle Holdings's EDGAR account.

USCA2 17

United States v. Mark Miller et al.

31.     On or about February 26, 2018, defendants MILLER and JABERIAN filed, or caused to be filed, an SEC Form 8-K announcing the resignation of the former CEO of Bell Buckle Holdings and Jaberian's appointment as CEO and sole director.

32.     That same day, Individual A made several posts about Bell Buckle Holdings on investorshub.com. In one post, Individual A noted that JABERIAN had been appointed as CEO of the company, and falsely claimed that JABERIAN "has been in the import/export business for the past 35 years, primarily dealing in bulk leather sales through the ports of Salerno, Italy and Izmir, Turkey; with commercial real estate ties to Dubai."

33.     On or about February 28, 2018, defendants MILLER, RAJKARAN, and JABERIAN drafted and issued, or caused to be issued, a press release announcing JABERIAN's appointment as CEO of Bell Buckle Holdings. The press release falsely described the company as "a new emerging Import/Export business in the U.S. with a long history of Bulk Leather Sales in the European and Middle-Eastern Markets." The press release falsely claimed that JABERIAN had been "an Importer/Exporter for the past 35 years operating a family owned business, which was established in 1958" and that his company had been involved in bulk leather sales "to the Ports of Salerno, Italy and Izmir, Turkey." None of this was true. This press release was issued in order to fraudulently pump up the price of BLLB stock.

34.     Defendants MILLER, RAJKARAN, and JABERIAN, and Individual A, then sold or "dumped" their stock after they had fraudulently inflated the stock price through their fraudulent press releases and internet postings.

USCA2 18

United States v. Mark Miller et al.

    a.    MILLER sold all 8 million shares of BLLB between February 27 and March 1, 2018, for a total return of nearly 900 percent.

    b.    Defendant RAJKARAN sold his more than 30 million shares of BLLB stock on March 1, 2018. In all, he obtained nearly a 100 percent return in less than two weeks.

    c.    Defendant JABERIAN sold approximately 20.5 million shares of BLLB stock between February 28 and March 5, 2018, for a return of approximately 350 percent.

    d.    Individual A sold all 4 million of her BLLB shares between February 28 and March 5, 2018. In all, she obtained a return of approximately more than 400 percent.

## The Hijacking of Utilicraft Inc. (OTC: UITA)

35.    In or about March 2018, defendants MILLER and RAJKARAN, along with Individuals A and B, hijacked and fraudulently manipulated the stock of Utilicraft Inc., a dormant public shell company that traded under the symbol UITA. MILLER, RAJKARAN, and JABERIAN used their control over the company to fraudulently manipulate and pump up the price of the company's stock so that they and others could profit from the sale of stock at fraudulently inflated prices to unwitting investors.

36.    On or about March 8, 2018, defendants MILLER and JABERIAN, and Individuals A and B, began purchasing shares of UITA stock at low prices in the OTC market. Collectively, the purchased approximately 9 million shares of UITA stock over the nine-day period from March 8 to 16, 2018.

USCA2 19

United States v. Mark Miller et al.

      a.    MILLER purchased approximately 2.55 million shares of UITA stock between March 8 and 14, 2018.

      b.    JABERIAN purchased more than 5 million shares of UITA stock between March 9 and 16, 2018.

      c.    Individual A purchased approximately 750,000 shares of UITA stock between March 8 and 12, 2018.

      d.    Individual B purchased approximately 780,000 shares of UITA stock on March 13 and 14, 2018.

37.    On or about March 15, 2018, defendant MILLER created a fake resignation letter and board minutes purporting to document the resignation of Utilicraft's CEO and the appointment of Individual B as the new CEO.

38.    That same day, defendant RAJKARAN and Individual A began promoting UITA stock through a series of posts on investorshub.com.

39.    On or about March 16, 2018, defendant MILLER submitted an application to obtain the filing codes for Utilicraft's EDGAR account. MILLER attached a fake document purporting to show that Utilicraft's CEO had resigned and that Individual B had been appointed as the new CEO.

40.    On or about March 21, 2018, defendant MILLER used his newly obtained control over the company's EDGAR account to issue, or cause to be issued, an SEC Form 8-K announcing the resignation of Utilicraft's CEO and Individual B's appointment as the new CEO. The 8-K further announced that MILLER had been appointed as Interim Secretary and Advisor.

USCA2 20

United States v. Mark Miller et al.

41.     On or about March 22, 2018, defendant MILLER issued, or caused to be issued, a press release announcing Individual B's appointment as the new CEO of Utilicraft. The press release falsely claimed that the company "will be entering into a new market sector, applying for a ticker symbol change, and applying for an uplist to the OTCQB Tier in the near future." The press release was fraudulent and intended to fraudulently manipulate and pump up the price of UITA stock so that the conspirators and others could sell their recently acquired stock at a profit.

42.     Defendants MILLER and JABERIAN, and Individuals A and B, then sold or "dumped" their stock after they had fraudulently inflated the stock price through their fraudulent press releases and internet postings.

        a.      MILLER sold all 2.55 million shares of UITA on March 22 and 23, 2018, for a total return of approximately 140 percent.

        b.      JABERIAN sold his more than 5 million shares at fraudulently inflated prices on March 21 and 22, 2018. In all, he obtained a return of more than 100 percent over a two-week period.

        c.      Individuals A and B also sold nearly all of their UITA shares at fraudulently inflated prices between March 20 and 22, 2018, making returns of approximately 500 percent and 29 percent, respectively.

43.     It was further part of the scheme that defendants MILLER, RAJKARAN, and JABERIAN concealed, misrepresented, and caused to be concealed and misrepresented, the existence and purpose of the scheme and the acts done in furtherance of the scheme.

USCA2 21

United States v. Mark Miller et al.

All in violation of Title 18, United States Code, Section 371, Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Counts 2-10
### (Securities Fraud)

44.    The allegations in paragraphs 1 through 43 of the Indictment are incorporated herein.

45.    From at least in or about 2017 through in or about 2019, in the State and District of Minnesota, and elsewhere, the defendants,

MARK ALLEN MILLER,
CHRISTOPHER JAMES RAJKARAN,
SAIED JABERIAN, also known as "Andre Jaberian,"

each aiding and abetting one another, and being aided and abetted by one another and by others known and unknown to the Grand Jury, by use of the means and instrumentalities of interstate commerce, the mails, and facilities of national securities exchanges, directly and indirectly, did knowingly and willfully use manipulative and deceptive devices and contrivances, in contravention of Title 17, Code of Federal Regulations, Section 240.10b-5, in connection with the purchase and sales of securities by: (a) employing devices, schemes, and artifices to defraud; (b) making an untrue statement of material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons, in that they participated in a scheme to defraud the investing public by

16

USCA2 22

United States v. Mark Miller et al.

hijacking and taking over dormant shell companies, for the purpose of artificially inflating and manipulating the price of those securities, in violation of Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5.

46. On or about the dates set forth below, in the State and District of Minnesota, and elsewhere, the defendants,

MARK ALLEN MILLER,
CHRISTOPHER JAMES RAJKARAN, and
SAEID JABERIAN, also known as "Andre Jaberian,"

each aiding and abetting one another, and being aided and abetted by one another and by others known and unknown to the Grand Jury, for the purpose of executing the securities fraud scheme set forth above, made, or caused to be made, the following sales or purchases of securities:

| Count | Defendant(s) | Date (on or about) | Description |
|---|---|---|---|
| 2 | MILLER | November 14, 2017 | Defendant MILLER's purchase of 50,000 shares of DIGI stock for approximately $0.0051 per share |
| 3 | MILLER, RAJKARAN | November 2, 2017 | Defendant RAJKARAN's purchase of 29,662,500 shares of ECMH for $0.0004 per share |
| 4 | MILLER, RAJKARAN | November 13, 2017 | Defendant MILLER's sale of 2 million shares of ECMH stock for $0.0012 per share |
| 5 | MILLER, RAJKARAN | November 13, 2017 | Defendant MILLER's sale of 10 million shares of ECMH stock for $0.0011 per share, |
| 6 | MILLER, RAJKARAN | November 14, 2017 | Defendant RAJKARAN's sale of 3,263,498 shares of ECMH stock for $0.0018 per share. |
| 7 | MILLER, RAJKARAN, JABERIAN | February 22, 2018 | Defendant RAJKARAN's purchase of 2 million shares of BLLB stock for $0.0003 per share |

USCA2 23

United States v. Mark Miller et al.

| 8 | MILLER, RAJKARAN, JABERIAN | February 22, 2018 | Individaul A's purchase of 3,340,000 shares of BLLB stock for $0.0003 per share |
| 9 | MILLER, RAJKARAN, JABERIAN | February 26, 2018 | Defendant JABERIAN's purchase of 20 million shares of BLLB for $0.0008 to $0.0009 per share |
| 10 | MILLER, RAJKARAN, JABERIAN | March 1, 2018 | Defendant JABERIAN's sale of 1,050,000 shares of BLLB stock for $0.0018 and $0.002 per share |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5, and Title 18, United States Code, Section 2.

**Counts 11-15**
(Wire Fraud)

47. The allegations in paragraphs 1 through 43 of the Indictment are incorporated herein.

48. From at least in or about 2017 through in or about 2020, in the State and District of Minnesota, and elsewhere, the defendants,

MARK ALLEN MILLER,
CHRISTOPHER JAMES RAJKARAN, and
SAIED JABERIAN, also known as "Andre Jaberian,"

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

49. On or about the dates listed below, in the State and District of Minnesota and elsewhere, the defendants, as set forth below, for the purpose of executing the scheme described above, knowingly caused to be transmitted by means

<u>United States v. Mark Miller et al.</u>

of a wire communication in interstate commerce, certain writings, signs, signals, and

sounds, including the following:

| Count | Defendants | Date (on or about) | Wire Details |
|-------|-----------|------------|--------------|
| 11 | MILLER, RAJKARAN, JABERIAN | February 22, 2018 | An email from MILLER in Minnesota to RAJKARAN with the subject line "BLLB Resignation and Appointment" that passed through servers located outside the State of Minnesota |
| 12 | MILLER, RAJKARAN, JABERIAN | February 23, 2018 | An email from MILLER in Minnesota to RAJKARAN containing Florida Secretary of State records for Bell Buckle Holdings Inc. that passed through servers located outside the State of Minnesota |
| 13 | MILLER, RAJKARAN, JABERIAN | February 23, 2018 | An email from MILLER in Minnesota to JABERIAN containing Florida Secretary of State records for Bell Buckle Holdings Inc. that passed through servers located outside the State of Minnesota |
| 14 | MILLER, RAJKARAN, JABERIAN | February 23, 2018 | An email from MILLER in Minnesota to JABERIAN containing a Update Passphrase Application for Bell Buckle Holdings's EDGAR account that passed through servers located outside the State of Minnesota |
| 15 | MILLER, RAJKARAN, JABERIAN | February 26, 2018 | An email from MILLER in Minnesota to RAJKARAN and JABERIAN with the subject line "BLLB Press Release" that passed through servers located outside the State of Minnesota |

All in violation of Title 18, United States Code, Sections 1343.

19

USCA2 25

United States v. Mark Miller et al.

## FORFEITURE ALLEGATIONS

50. Counts 1 through 15 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c).

51. As the result of the offenses alleged in Counts 1 through 15 of this Indictment, the defendants shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), in conjunction with Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

52. If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) and by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____        _____
ACTING UNITED STATES ATTORNEY          FOREPERSON

USCA2 26

EXHIBIT B

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Minnesota

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  CR 21-142(2) DSD/KMM |
| Christopher James Rajkaran | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

    **YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   Christopher James Rajkaran                                                                              ,

who is accused of an offense or violation based on the following document filed with the court:

✓ Indictment          Superseding Indictment          Information          Superseding Information          Complaint

   Probation Violation Petition          Supervised Release Violation Petition          Violation Notice          Order of the Court

                                                                                 Pretrial Release Violation Petition

This offense is briefly described as follows:
Count 1: Conspiracy To Commit Securities Fraud 18:371, 15:78j(b) and 78ff,  and Title 17, Code of Federal Regulations, Section 240.10b-5
Counts 2-10: Securities Fraud 15:78j(b) and 78ff; and Title 17, Code of Federal Regulations, Section 240.10b-5 and 18:2
Counts 11-15: Wire Fraud 18:1343

Date:  06/16/2021

City and state:    Minneapolis, MN

*Issuing officer's signature*

Kate M. Fogarty, Clerk of Court
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____                                  _____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender: _____

Known aliases: _____

Last known residence: _____

Prior addresses to which defendant/offender may still have ties: _____

_____

Last known employment: _____

Last known telephone numbers: _____

Place of birth: _____

Date of birth: _____

Social Security number: _____

Height: _____     Weight: _____

Sex: _____     Race: _____

Hair: _____     Eyes: _____

Scars, tattoos, other distinguishing marks: _____

_____

_____

History of violence, weapons, drug use: _____

_____

Known family, friends, and other associates *(name, relation, address, phone number)*: ___

_____

FBI number: _____

Complete description of auto: _____

_____

Investigative agency and address: _____

_____

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

_____

_____

Date of last contact with pretrial services or probation officer *(if applicable)*:

_____

_____

```
MIME-Version:1.0
From:ecf_bounces@nyed.uscourts.gov
To:nobody@nyed.uscourts.gov
Bcc:
--Case Participants: Samantha Alessi (samantha.alessi@usdoj.gov), Kannan Sundaram
(edny_ecf@yahoo.com, kannan_sundaram@fd.org), Magistrate Judge James R. Cho
(james_cho@nyed.uscourts.gov, john_hazelwood@nyed.uscourts.gov,
sarah_maneval@nyed.uscourts.gov, saudia_gillespie@nyed.uscourts.gov)
--Non Case Participants:
--No Notice Sent:

Message-Id:15949810@nyed.uscourts.gov
Subject:Activity in Case 1:21-mj-00715-JRC USA v. Rajkaran Initial Appearance - Rule
5(c)(3)
Content-Type: text/html
```

## U.S. District Court

### Eastern District of New York

## Notice of Electronic Filing

The following transaction was entered on 6/22/2021 at 4:24 PM EDT and filed on 6/18/2021

| | |
|---|---|
| **Case Name:** | USA v. Rajkaran |
| **Case Number:** | 1:21–mj–00715–JRC |
| **Filer:** | |
| **Document Number:** | No document attached |

**Docket Text:**
**Minute Entry for proceedings held before Magistrate Judge James R. Cho VIA WEBEX VIDEO:Initial Appearance in Rule 5(c)(3) Proceedings as to Christopher James Rajkaran held on 6/18/2021, Attorney Appointment of federal defender Kannan Sundaram for the defendant. AUSA Samantha Alessi. (FTR Log #Weekend arraignment.) Defendant arraigned on a removal complaint to the District of Minnesota. No bail appl presented. Commitment to District of Minnesota entered. Defendant waived identity hearing. (Yuen, Sui–May)**

**1:21–mj–00715–JRC–2 Notice has been electronically mailed to:**

Kannan Sundaram     kannan_sundaram@fd.org, edny_ecf@yahoo.com

Samantha Alessi     Samantha.Alessi@usdoj.gov

**1:21–mj–00715–JRC–2 Notice will not be electronically mailed to:**

AO 94 (Rev. 8/97) Commitment to Another District

# UNITED STATES DISTRICT COURT

__EASTERN__     District of     __NEW YORK__

| UNITED STATES OF AMERICA<br>V.<br><br>Christopher J. Rajkaran | **COMMITMENT TO ANOTHER<br>DISTRICT** |
|---|---|

| DOCKET NUMBER | | MAGISTRATE JUDGE CASE NUMBER | |
|---|---|---|---|
| District of Arrest | District of Offense<br>21-CR-142 | District of Arrest<br>21-715 M | District of Offense |

**CHARGES AGAINST THE DEFENDANT ARE BASED UPON AN**

☑ Indictment    ☐ Information    ☐ Complaint    ☐ Other (specify)

charging a violation of 18      U.S.C. §   1343

**DISTRICT OF OFFENSE** Minnesota

**DESCRIPTION OF CHARGES:**

Conspiracy to Commit Securities Fraud

**CURRENT BOND STATUS:**

☐ Bail fixed at               and conditions were not met
☑ Government moved for detention and defendant detained after hearing in District of Arrest
☐ Government moved for detention and defendant detained pending detention hearing in District of Offense
☐ Other (specify)

| **Representation:** | ☐ Retained Own Counsel | ☑ Federal Defender Organization | ☐ CJA Attorney | ☐ None |
|---|---|---|---|---|

| **Interpreter Required?** | ☑ No | ☐ Yes | Language: | |
|---|---|---|---|---|

**DISTRICT OF** NEW YORK

## TO: THE UNITED STATES MARSHAL

You are hereby commanded to take custody of the above named defendant and to transport that defendant with a certified copy of this commitment forthwith to the district of offense as specified above and there deliver the defendant to the United States Marshal for that District or to some other officer authorized to receive the defendant.

| 6/18/2021 | *James R. Cho* |
|---|---|
| Date | United States Judge or Magistrate Judge |

**RETURN**

This commitment was received and executed as follows:

| DATE COMMITMENT ORDER RECEIVED | PLACE OF COMMITMENT | DATE DEFENDANT COMMITTED |
|---|---|---|
| | | |

| DATE | UNITED STATES MARSHAL | (BY) DEPUTY MARSHAL |
|---|---|---|
| | | |

AO 466A (Rev. 12/17) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
## for the

|  |  |
|---|---|
| United States of America | ) |
| v. | )    Case No.    21-715 M |
|  | ) |
| Christopher James Rajkaran | )    Charging District's Case No. _____ |
| _____ | ) |
| *Defendant* | ) |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*    Minnesota

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☐    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district. I request that my ☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:    6/18/2021            S/ Christopher James Rajkaran
                                                 *Defendant's signature*

                                 S/ Kannan Sundaram
                                       *Signature of defendant's attorney*

                                           *Printed name of defendant's attorney*